The decision below is signed as a decision of the court.

Signed: August 09, 2007.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SPECTRUM, LTD, | ) | Case No. 02-02463 |
| | ) | (Chapter 7) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| MARC E. ALBERT, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 07-10006 |
| PACIFIC SHOWROOMS WEST, | ) | **Not for Publication in** |
| INC., *et al.*, | ) | **West's Bankruptcy Reporter** |
| | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION RE DEFENDANTS' MOTION TO DISMISS

Marc E. Albert, the chapter 7 trustee of the Spectrum, LTD bankruptcy case, commenced the instant adversary proceeding by the filing of a three-count complaint alleging, inter alia, that the defendants, Pacific Showrooms West, Inc., Les Bader and Dale Mardiros, knowingly and fraudulently concealed and converted assets of the estate for their own profit, use and enjoyment. Count I of the complaint seeks a turnover and accounting of

estate assets, count II is a claim for conversion, and count III is a claim for common-law fraud.

After filing an answer, the defendants filed what is styled as a Rule 12(b) motion to dismiss, contending that Albert's conversion and fraud claims must, as a matter of law, be dismissed because they are barred by the statute of limitations and the doctrine of laches. The defendants further contend that Albert's fraud count must be dismissed because the complaint fails to state a claim for fraud. Finally, Bader and Mardiros contend that all counts against them must be dismissed because Albert failed to state any claims against them in their individual capacities. As discussed below, the court will dismiss the trustee's fraud claim because it fails to state a claim. The court will deny the balance of the motion.

I

The defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b). As observed by the trustee in his response, however, the defendants answered the complaint before filing their motion to dismiss and 12(b) motions are only permitted before an answer is filed. Fed. R. Civ. P. 12(b)("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."). Rather than dismiss the motion based upon this defect, however, the court will treat the motion as a Rule 12(c) motion for judgment on the pleadings,

which may be filed any time "[a]fter the pleadings are closed but within such time as not to delay the trial. . . ." Fed. R. Civ. P. 12(c); United Parcel Serv., Inc., v. Int'l Bhd. of Teamsters, AFL-CIO, 859 F. Supp. 590, 592 n.1 (D.D.C. 1994)(although captioned as a motion to dismiss, defendant's motion is actually a motion for judgment on the pleadings because the defendant filed an answer prior to filing its motion). No prejudice will arise from the court treating the motion as a 12(c) motion rather than a 12(b) motion as both motions are subject to the same standard of review. See Jung v. Ass'n of Am. Med. Colleges, 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004) (no prejudice results from treating Rule 12(c) motion as a Rule 12(b) motion because the standard of review is essentially the same).

## II

The court will deny the defendants' motion to the extent it seeks dismissal of the conversion and fraud claims based upon the statute of limitations or the doctrine of laches.

### A.

### Statute of Limitations

Under District of Columbia law, fraud claims must be brought within three years from the time the fraud is either discovered or reasonably should have been discovered. Riddell v. Riddell Wash. Corp., 866 F.2d 1480, 1489-90 (D.C. Cir. 1989); Interdonato v. Interdonato, 521 A.2d 1124, 1135 (D.C. 1987); Rothenberg v.

Ralph D. Kaiser Co (In re Rothenberg), 173 B.R. 4, 12 (Bankr. D.D.C. 1994).  The court cannot, based merely on the pleadings, determine when Albert's fraud claim accrued because "what a plaintiff knew and when he knew it, in the context of a statute of limitations defense, are questions of fact for the jury."  Riddell, 866 F.2d at 1484.

The defendants contend that the discovery rule is inapplicable to this and all conversion actions set in commercial circumstances.[1]  The court rejects that argument and concludes that Albert has alleged facts from which it can be inferred that the discovery rule should apply.  Factors relevant to a determination of whether the discovery rule should apply in a particular case include: "(1) the justifiable reliance of a plaintiff on the professional skills of those hired to perform their work; (2) the latency of the deficiency; (3) the balance between the plaintiff's interest in having the protection of the law and the possible prejudice to the defendant; and (4) the interest in judicial economy."  Kuwait Airways Corp. v. Am. Sec. Bank, 890 F.2d 456, 462 (D.C. Cir. 1990) (citing Woodruff v.

---

[1] The defendants cite to Kuwait Airways Corp. v. Am. Sec. Bank, 890 F.2d 456 (D.C. Cir. 1990) for the proposition that the discovery rule does not apply to claims of conversion set in commercial circumstances.  Although the Kuwait Airways court held the discovery rule inapplicable under the commercial circumstances presented by that case, it did not hold that the discovery rule is always unavailable in conversion cases, and it does not preclude a finding that the discovery rule applies to Albert's conversion claim.

4

<u>McConkey</u>, 524 A.2d 722, 727-28 (D.C. 1987)).  Albert was faced with the potentially onerous task of marshaling an unspecified quantity of estate assets that were believed, but not known, to be in the possession of various retail distributors throughout the country.  The court can fairly infer that, without the cooperation of those retail distributors, Albert might be unable to verify the existence of certain estate assets and might likewise be unable to detect any injury arising from the wrongful retention and conversion of such assets.  As such, the injury may properly be characterized as latent, which would warrant application of the discovery rule.  As to the other factors, such as a balancing between prejudice to the defendants versus the interests of the plaintiff and judicial economy, it would be pure speculation at this juncture for the court to decide whether those factors weigh in favor of applying the discovery rule or not.  Thus, although Albert has alleged sufficient facts to permit the court to infer that the discovery rule may apply, the court is unable on this limited record to determine whether the discovery rule should actually apply, and if so, whether the complaint was timely under the tolled limitations period.  Moreover, even if the discovery rule is found not to apply, it is unclear exactly when some of the offending acts are alleged to have occurred, and it may be that the trustee's complaint is timely even if the limitations period is not subject to tolling.

Accordingly, to the extent the defendants seek dismissal based upon the statute of limitations, the defendants' motion is denied.

B.

Laches

The court will deny the defendants' motion to dismiss based on laches because it calls for a fact-intensive inquiry into the relative equities of the parties' conduct and is therefore not properly addressed on a 12(c) motion for judgment on the pleadings.

III

Albert has failed to state a claim for fraud and to the extent the defendants seek dismissal on that basis, the motion is granted.

The essential elements of a claim for common law fraud under District of Columbia law are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken on reliance upon the representation." Bennet v. Kiggins, 377 A.2d 57, 59 (D.C. 1977), quoted in Brown v. Dorsey & Whitney, LLP, 267 F. Supp. 2d 61, 79 (D.D.C. 2003). When pleading fraud, one "must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and

6

allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient." Bennet, 377 A.2d at 59-60.  In the instant case, Albert alleges that the defendants' intentional failure to respond to the trustee's letter of inquiry, coupled with the defendants' intent that such non-responsiveness cause the trustee to cease his investigation, constitutes a representation sufficient to support Albert's fraud claim.  It is well-established, however, that under District of Columbia law "mere silence does not constitute fraud unless there is a duty to speak." Kapiloff v. Abington Plaza Corp., 59 A.2d 516, 517 (D.C. 1948); see also Brown, 267 F. Supp. 2d at 79; Searl v. Earll, 221 F.2d 24, 28 (D.C. Cir. 1954)(concealment of facts when there was a duty to speak constituted fraud); Pyne v. Jamaica Nutrition Holdings, Ltd., 497 A.2d 118, 131 (D.C. 1985)(failure to disclose material information may constitute fraud where there is a duty to disclose); Rothenberg v. Aero Mayflower Transit Co., 495 F. Supp. 399, 406 (D.D.C. 1980) ("[a] false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen"); Justice v. Anderson County, 955 S.W.2d 613, 616-17 (Tenn. Ct. App. 1997) (discussing Tennessee law, and finding that in "[a]ll the instances in which the duty to disclose exists and in which a concealment is therefore fraudulent, may be reduced to three distinct classes:

7

1. Where there is a previous definite fiduciary relation between the parties. 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other. 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith.") (internal citations and quotations omitted). Albert's complaint fails to allege the existence of a special or fiduciary relationship between Albert and the defendants or other circumstances that would give rise to a duty to disclose. Albert having made no allegations from which the court can infer that the defendants had a duty to respond, the defendants' failure to respond to Albert's letter does not constitute a "representation" and cannot serve as a the predicate for Albert's fraud claim.

Albert argues that his fraud claim should not be dismissed because his allegations are not limited to the defendants' failure to respond to the trustee's letter, but also include allegations that the defendants met and agreed to purposely not write back, to conceal the estate's property, to sell the property for their own benefit, and that all of this was done with the understanding that Albert would not pursue his inquiry further if he did not receive a response. Although such allegations may support Albert's theory that the discovery rule should toll the limitations period, and may likewise support Albert's request for punitive damages, they do not provide any

basis for the court to infer the existence of a special relationship between the parties such that the defendants had a legal duty to respond to the trustee's letter.[2]

The court is mindful that some jurisdictions have articulated a more liberal standard for establishing fraud by silence. For example, under Michigan law, "the rule generally is that silence alone is not enough, but in addition there must exist a violation of some duty to disclose, arising for example, from a fiduciary relationship, or possibly in rare cases where special facts and circumstances give rise to an equitable duty of disclosure such as might, along with other facts, be involved in a situation where one party has superior knowledge that is not within the fair and reasonable reach of (or could not in the exercise of reasonable diligence be obtained by) the other party to the transaction." Rochester Hills Chrysler Plymouth v. Phillips (In re Phillips), 153 B.R. 758, 761 (Bankr. E.D. Mich. 1993)(finding no fiduciary relationship and concluding that a

---

[2] Several allegations in the complaint address Albert's relationship of trust with Peter Ross, the principal of the debtor, who is alleged to have contributed to the defendants' decision to conceal estate assets. See Compl. ¶¶ 12, 13, 15, 24, 25, 26, 29. Ross, as the principal of the debtor, had a statutory duty to cooperate with Albert and would have had an affirmative duty to disclose estate assets. Ross, however, is not named as a defendant in this proceeding, and the trustee has not made any allegations from which the court can infer that the special relationship existing between Ross and Albert should extend to the defendants such that they had a duty to respond to the trustee's letter.

9

finding of a duty to disclose under the circumstances would in effect convert most breaches of contract into fraudulent actions).  Even when viewed under this broader standard, which permits a plaintiff to show an equitable duty to disclose based upon special facts and circumstances, Albert's fraud claim must be dismissed.  Although Albert's complaint paints the defendants in an unflattering light, and contends that their conversion of estate assets was undertaken deliberately and surreptitiously, the only "duty" that one might infer from such allegations is that the defendants had a duty to not secretly retain and convert estate assets.  The trustee's remedy in that regard is to pursue the defendants for turnover and conversion.  The allegations in the trustee's complaint are simply not enough to permit the court to infer that the defendants had an affirmative legal or equitable duty to disclose their possession of estate assets in response to the trustee's letter.  To find otherwise would be tantamount to holding that all defendants who knowingly and wrongfully retain and dispose of estate property such that they are liable to the trustee for conversion are also liable for fraud.

As a matter of law, the court determines that the trustee's unilateral action of sending a letter requesting information from the defendants was insufficient to trigger an affirmative duty on the part of the defendants to respond.  Accordingly, Albert has

failed to state a claim for fraud and count III of the complaint must be dismissed.

IV

The court rejects the argument that the complaint fails to state any cause of action against defendants Bader and Mardiros in their individual capacities.  In Count I for conversion and turnover, for example, Albert alleges:

> 18.   Pacific, Bader, and Mardiros . . . were custodians of property of Spectrum.
>
> 19.   The Defendants possessed knowledge of the commencement of the case, and knew of the appointment of the Trustee for Spectrum.
>
> 20.   Notwithstanding the above, the Defendants administered, disbursed, sold, retained possession of, and otherwise alienated or disposed of property belonging to Spectrum in a manner not authorized by law, and in a manner which deprived the estate of its value.

Likewise, as to Count II for Conversion, Albert alleges:

> 22.   As in the manner described above, the Defednants, Bader and Mardiros, acting individually and on behalf of Pacific, intentionally concealed property of the estate from the Trustee with the intent and with the effect of converting the same for their own profit, use, and enjoyment.

Although earlier paragraphs of the complaint reflect that certain actions were undertaken by the individual defendants on behalf of the defendant Pacific Showrooms West, under the liberal notice pleading standards of the Federal Rules of Civil Procedure,

Albert has sufficiently alleged that the defendants acted and are thus liable both individually and in a representative capacity. Accordingly, the defendants' motion to dismiss on this basis is without merit and will be denied.

An order follows.

[Signed and dated above.]

Copies to:

All counsel of record.